42 So.2d 632

## HANCOCK v. LIGGETT & MYERS TOBACCO CO.
### 6 Div. 761.

Supreme Court of Alabama.
Oct. 6, 1949.

Rehearing Denied Nov. 17, 1949.

J. Terry Huffstutler, of Birmingham, for appellant.

Lange, Simpson Robinson & Somerville, of Birmingham, for appellee.

BROWN, Justice.

This is an action of trespass on the case by appellant against appellee seeking a judgment for damages for personal injury and property loss occasioned by the collision of defendant's motor vehicle with the plaintiff's automobile on First Avenue North at about the intersection of 34th Street in the City of Birmingham on the evening of February 18, 1947.

The plaintiff's cause of action is stated in two counts of his complaint as last amended, the first ascribing the injuries to plaintiff's person and damage to the automobile to the negligence of "defendant's servant, or agent," said count averring, "whose name to the plaintiff is unknown, but who was then and there acting within the line and scope of his employment, negligently drove or operated the automobile of the defendant over, upon or against the automobile of the plaintiff, and as a proximate consequence thereof, the plaintiff received severe personal injuries" (which are catalogued) and the automobile of plaintiff "a new Plymouth, was so greatly damaged" etc.

The second count is in like verbiage and charges that said agent or servant of the defendant "willfully or wantonly drove or operated the automobile of the defendant over, upon or against the automobile of the plaintiff."

The defendant pleaded the general issue in short by consent with leave to give in evidence any matter which if specially pleaded would constitute a good defense.

At the conclusion of the evidence the trial court gave, at the request of the defendant, the affirmative charge with hypothesis in his favor and this ruling and action of the court is the basis for the only assignment of error on the record.

The evidence is without dispute that plaintiff while driving his automobile, a new Plymouth, on First Avenue North in the City of Birmingham on the evening of February 18, 1947, was struck by a truck belonging to the defendant, carrying an ex-

cise license plate issued to the defendant by the Jefferson County authorities. Said truck collided with plaintiff's car and damaged the said car and injured the plaintiff. The plaintiff was driving his car on the right side of the avenue going east and the defendant's car was proceeding west at the rate of 50 to 60 miles an hour on the wrong side of said avenue. Immediately after the collision, the evidence shows, the driver of the truck of the defendant got out of the truck, went around and looked at the back end and the fender of the car on the side where it collided with plaintiff's car and then immediately ran away in the dark, leaving the scene and the truck of the defendant with the keys in the ignition slot. The evidence further shows that on one side of the truck of the defendant was painted the words "Liggett & Myers Tobacco Company" and on the other side the name of a product of tobacco which was handled and sold by Liggett & Myers Tobacco Company and that in the truck was carried several cartons of Chesterfield Cigarettes and other matters designated for advertising the business of the defendant.

This evidence made out a prima facie case for the plaintiff and imposed on defendant the burden of going forward with the evidence and showing that the person driving the defendant's truck was not the agent or servant of the defendant or if he was such agent that he was not acting within the line and scope of his authority. Plaintiff's evidence shows without dispute that the collision occurred on Friday evening between 6 and 7 o'clock on the 18th day of February, 1947. Cruse-Crawford Mfg. Co. v. Rucker, 220 Ala. 101, 123 So. 897; Tullis v. Blue, 216 Ala. 577, 114 So. 185.

The defendant to rebut and overcome the presumption arising from the ownership of the car offered two witnesses, Murray Dixon Jr. and L. G. Nunnally Jr. and several witnesses to corroborate their testimony as to their whereabouts between the hours of 6 and 7 o'clock P.M. on the evening of February 18, 1947. The testimony of Dixon and Nunnally goes to show that during the year 1947 and particularly on February 17th and 18th, they were each employees of Liggett and Myers Tobacco Company and that they were each furnished an automobile service sedan or operating truck of Liggett and Myers Tobacco Company and were furnished with advertising material and goods to advertise and sell for said defendant. That they worked separately and had separate vehicles and separate supplies and worked during the daytime in separate territory. That they registered as guests of the Bankhead Hotel on the 17th of February, 1947, after their day's work on Monday and that they returned to the hotel on Tuesday. That they did not occupy room on the same floor but on separate floors. That after they returned to the hotel on Tuesday, they communicated over the telephone and agreed to have supper or dinner together. That Dixon had a customer at Howard's Grill out in Norwood and they planned to go to Howard's Grill for their evening meal. That prior to this communication, they had parked their respective cars, Dixon in front of the Bankhead Hotel, and Nunnally across the street from the hotel on the side, on 23d Street. That they got together about 6 o'clock in the lobby of the hotel and they were continuously together until they retired at 11 o'clock. Dixon testified that in the meantime they had learned that his (Nunnally's) car had been stolen but when they came down out of the hotel to go on their way to Howard's Grill, Nunnally discovered that he didn't have his keys with him. He thought he had left them in his room or in Dixon's room, so naturally "we went in my car." From the time they decided to go in Dixon's car they were continuously together in the presence of each other until they returned to the hotel and retired for the night. Dixon testified that while he and Nunnally were in his car or anybody else's car, they did not have a wreck that night and run away from the scene of the accident or have a wreck in any way or time or fashion. That at no time during that time did they get in a car assigned to Nunnally. That they went to Howard's Grill and remained there about an hour and then went to the Masonic Temple where they were seen by three or four witnesses. What occurred at the Temple was not material.

That they had no mishap going to or returning from Howard's Grill. After they had been to the Masonic Temple and returned to the Bankhead Hotel, Mr. Nunnally went over to check the car and see that it was locked and he walked over there and it was gone. That they looked around for the automobile and could not find it anywhere. That they reported the fact to a Mr. Linberg, who was the director or local manager of the defendant's office. That during the evening they were both dressed in suits, overcoats and hats, business clothing. That Mr. Nunnally did not have on a jacket. Dixon testified that he had known Nunnally at that time about six months and that they were going out together.

The witness Nunnally testified, referring to the occasion that he and Dixon got together at the Bankhead Hotel that he and Dixon went to their respective rooms on different floors in the hotel and that they met coming down on the elevator and agreed to have dinner together. "I suggested we go in my car and I felt in my pocket and didn't have the keys and thought or said I must have left them in the room (Dixon's) or mine. Dixon spoke up and said well, we will go in my car." When Nunnally felt in his pocket at that time was the first time he realized he did not have the keys. He was then asked this question, "Do you know—whether—what you actually did with them, whether you left them in the door, motor or dropped them, do you have any recollection? Do you know positively when you got out of the car what you actually did with them? Whether you left them in the door or dropped them? Do you know actually when you got out of the car you had them?" He replied, "I didn't know whether I left them in the door or dropped them near the car. I thought I had them in my pocket."

The witness further testified that after he found he didn't have the keys in his pocket, they got in Dixon's car and drove out over 12th Street and 36th to the customer's place of business operated by a Mr. Beard, to whom he was introduced by Dixon. That they left the hotel about 6 o'clock and it took them five or ten minutes to drive out to that area and that they remained there for about an hour. That then they left Howard's Grill and went to the Masonic Temple, arriving there about 7:30. That during all that time he had not had a wreck nor did he run away from the scene of an accident or anything of that kind. That he did not drive out 1st Avenue 50 or 60 miles an hour and run into anybody on the wrong side of the road. That he did not have any wreck, mishap or impact of any kind on that evening. That when he learned that his car had been in a wreck was when Mr. Linberg, the District Manager, talked to Mr. Roberson. That he learned that his car was not where he had parked it, he imagined, it was about 8 o'clock or it may have been a few minutes before. That Mr. Linberg was the defendant's district manager. That he reported the theft of the car to Linberg. That "is our instruction." That he and Dixon had been in each others presence the entire evening from the time they left the hotel until the accident, whatever it was, happened.

The witnesses offered by the defendant to corroborate the testimony of Dixon and Nunnally as to their whereabouts during the evening was not inconsistent with their testimony, except that the witness Beard did not remember the date and could not identify the time that they were at his grill. The evidence shows that Nunnally ceased to be an employee of the tobacco company for whom he had been working for nine years a week after this collision, and he testified that his resignation had been previously filed with the company.

There was no positive evidence that the driver of the truck was not defendant's agent or servant and his identity was not known. There was evidence going to show that a man was arrested and taken to Police Headquarters but a case was not made against him and he was released without prosecution.

 While the evidence was sufficient to support an inference to be drawn by the jury from all of the testimony that the person who was driving the car at the time was not the agent and servant of the defendant acting within the line and scope of his employment, nevertheless, it was a question for the jury, and the court erred in

giving the affirmative charge for the defendant. For this error the judgment of the circuit court is reversed and the cause remanded.

Reversed and remanded.

FOSTER, LAWSON and SIMPSON, JJ., concur.